UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MAJESTY SPIKENER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 18-188-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| OLIVE GARDEN HOLDINGS, LLC, | ) | **MEMORANDUM OPINION** |
| doing business as Olive Garden | ) | **AND ORDER** |
| Restaurant, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the defendant's motion to dismiss and compel the plaintiff to participate in arbitration. [Record No. 6] For the reasons that follow, the Court will hold an evidentiary hearing before ruling on the relief requested.

**I.**

Plaintiff Majesty Spikener ("plaintiff" or "Spikener") worked as a waitress at the defendant's Olive Garden Restaurant in Lexington, Kentucky, for about four months beginning in November 2016. [Record No. 1-1, ¶ 7] Spikener alleges that she was subjected to a racially hostile work environment and ultimately was terminated because she reported the situation to the defendant's upper management. *Id.* Spikener filed suit in Fayette Circuit Court in February 2018, asserting claims against Defendant Olive Garden Holdings, LLC ("defendant" or "Olive Garden") under the Kentucky Civil Rights Act, Ky. Rev. Stat. 344.010, *et seq*. The defendant removed the matter to this Court based on diversity jurisdiction. It filed a motion to dismiss and compel arbitration on April 4, 2018.

**II.**

Spikener reports that she visited the defendant's Olive Garden restaurant in Lexington, Kentucky on October 22, 2016. [Record No. 7-1, p. 1] Her friend Josh Barcomb was working there as a manager. According to Spikener, he asked her to apply for a waitress position. *Id.* Spikener wrote her personal information and work history on a sheet of paper and gave it to Barcomb, who went to his office and submitted an online job application on her behalf. *Id.* at p. 2. The employment application included the following statement:

> I understand that the Darden Companies, including Olive Garden . . . have in place a Dispute Resolution Process (DRP), and I further acknowledge and agree that if I am offered and accept employment, any dispute between me and any of the Darden Companies relating in my employment and/or my separation from employment, shall be submitted within one (1) year of the day which I learned of the event and shall be resolved pursuant to the terms and conditions of the DRP.

[Record No. 6-2, p. 7] "Accept," appears beside this clause in Spikener's completed application.

Spikener received a telephone message several days later advising that she had been hired but needed to attend orientation in the beginning of November. [Record No. 7-1, p. 2] She attended orientation in early November 2016, where two managers and several other "soon-to-be-employees" were present. *Id.* Spikener contends that an alternative dispute resolution agreement was never mentioned during her training, orientation, or employment and that she never signed such an agreement. *Id.* However, Sean Nealey, a former manager of Olive Garden's Lexington restaurant, reports that he conducted the employee orientation that Plaintiff Spikener attended. [Record No. 8-3] Nealey states that he specifically discussed the DRP program, including the mandatory arbitration required of all employees. He reported that

Spikener did not make any objections or raise concerns regarding the DRP and that she signed the DRP acknowledgement. *Id.*

The defendant has been unable to locate portions of Spikener's personnel file, including the signed DRP acknowledgement, which provides as follows:

> This agreement contains the requirements, obligations, procedures, and benefits of the Dispute Resolution Process (DRP). **I acknowledge that I have received and/or have had the opportunity to read this arbitration agreement. I understand that this arbitration agreement requires that disputes that involve the matters subject to the agreement be submitted to mediation or arbitration pursuant to the arbitration agreement rather than to a judge or jury in court.** I agree as a condition of my employment, to submit any eligible disputes I may have to the DRP and to abide by the provisions outlined in the DRP. I understand this includes, for example, claims under state and federal laws relating to harassment or discrimination, as well as other employment-related claims as defined by the DRP. Finally, I understand that the Company is equally bound to all of the provisions of the DRP.

[Record No. 6-2, pp. 3, 20 (emphasis in original)]

Melissa Ingalsbe, Director of Dispute Resolution and Human Resources, provided a declaration based on her review of company files, including Spikener's personnel records. [Record No. 6-2] Ingalsbe reported that Darden Restaurants, Inc., which operates Olive Garden, maintains a dispute resolution process that has been in place since at least 2005, and it applies to all employees. *Id.* at p. 2. Ingalsbe further reported that, as part of the hiring and orientation process, each employee is provided with a DRP book and asked to sign an acknowledgement. While the defendant was unable to locate Spikener's signed DRP acknowledgment form, Ingalsbe stated that Spikener would not have been permitted to work at the restaurant had she declined to agree to the DRP and sign the form. *Id.* at p. 3.

Jefe D. Gabat also provided a declaration stating that he was the general manager of the Lexington Olive Garden during Spikener's employment. [Record No. 8-5] Gabat

indicated that he reviewed the personnel files for all seven employees who completed orientation on November 7, 2016, including Spikener. According to Gabat, Spikener's file was the only one that did not contain a signed DRP acknowledgment. Gabat confirmed that no employee is permitted to begin employment if he or she does not sign the DRP acknowledgement. *Id.* Gabat also reported that a poster with DRP information was prominently displayed in an employee area in the restaurant.

### III.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, "embodies [a] national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016). The Act provides that written agreements to arbitrate disputes arising out of contracts or transactions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. While doubts as to the parties' intentions are resolved in favor of arbitration, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985), the "FAA was not enacted to force parties to arbitrate in the absence of an agreement." *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315 (6th Cir. 2000) (quoting *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997)). The principal issue here is whether a valid agreement to arbitrate exists.

The defendant contends as a threshold matter that an arbitrator, rather than the Court, must decide whether there is an enforceable agreement to arbitrate. [Record No. 6-1. pp. 6-7] This argument is misplaced. Spikener challenges the validity of the arbitration agreement itself, so the court must consider that challenge before ordering compliance with the agreement. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 66, (2010). Further, the

defendant relies solely on a portion of the employee DRP booklet which provides: "The arbitrator will resolve any issue/dispute arising out of or relating to the interpretation or application of the DRP or its rules, including without limitation, any arbitration rules or procedures or manner in which the arbitration proceeding will be conducted." [Record No. 6-2, p. 16] This clause is too narrow to support the defendant's position in any event, as it does not encompass disputes involving the *formation* of the agreement. *See Rent-A-Center*, 561 U.S. at 66.

The Court engages in a limited review to determine whether the plaintiff's claims are arbitrable. *See Mitsubishi Motors Corp.*, 473 U.S. at 626; *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). This requires that it determine whether "a valid agreement to arbitrate exists between the parties" and whether "the specific dispute falls within the substantive scope of the agreement." *Richmond Health Facilities*, 811 F.3d at 195. Spikener does not appear to dispute the second prong, as the DRP acknowledgement specifically covers state law claims of harassment and discrimination. The Court approaches factual questions as it would at the summary judgment stage. *See Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002); *Yaroma v. Cashcall, Inc.*, 130 F. Supp.3d 1055, 1062 (E.D. Ky. 2015).

Kentucky law guides the Court's inquiry regarding contract formation. A contract is enforceable only if both parties agree to be bound by it. *Braxton v. O'Charley's Rest. Props., LLC*, 1 F. Supp. 3d 722, 726 (W.D. Ky. 2014) (citing *David Roth's Sons, Inc. v. Wright & Taylor, Inc.*, 343 S.W.2d 389, 391 (Ky. 1961)). Such an agreement typically is manifested when both parties sign the contract. Section 2 of the FAA requires that arbitration agreements be in writing, but unsigned agreements to arbitrate may be enforced when the parties have manifested acceptance of the contract through their actions. *See Seawright v. Am. Gen. Fin.*

*Servs., Inc.*, 507 F.3d 967 (6th Cir. 2007) ("[A]rbitration agreements under the FAA need to be written, but not necessarily *signed*."); *Braxton*, 1 F. Supp. 3d at 725; *Polly v. Affiliated Computer Servs., Inc.*, No. 10-135, 2011 WL 93715, at *2 (E.D. Ky. Jan. 11, 2011). However, an employee must have actual knowledge of the existence of an arbitration agreement before it is enforceable. *Sprowls v. Oakwood Mobile Homes, Inc.*, No. 3: 99-CV-756-H, 2000 WL 33975578, *4 (W.D. Ky. May 12, 2000).

Spikener is adamant that she did not sign the DRP agreement or have any knowledge of it. The defendant contends that this assertion is untrue. It asserts that Spikener did review and sign the agreement, and that she also manifested acceptance of the contract through her actions. Specifically, it points to Spikener's acceptance of the term in her online employment application and subsequent acceptance of employment. However, Spikener contends that she did not personally complete the online application and knew nothing about the DRP provision. The record does not include testimony from Barcomb, the Olive Garden employee whom Spikener contends completed the application on her behalf.

Olive Garden has filed what it alleges are previous employment applications that Spikener submitted to another Darden restaurant in 2012 and 2014. [Record No. 8-1, 8-2] Each includes acceptance of the DRP acknowledgement. While these applications may tend to show that Spikener was aware of the existence of the DRP, Spikener has not had an opportunity to respond these filings.

The defendant also suggests that Spikener manifested assent to the DRP by continuing to work in the restaurant where a "DRP program poster" was prominently displayed. [Record No. 8-5, p. 2] Manager Gabat reports that the defendant posted information about "DRP panelists" and made copies of the employee handbook available at all times. Gabat claims that

*Servs., Inc.*, 507 F.3d 967 (6th Cir. 2007) ("[A]rbitration agreements under the FAA need to be written, but not necessarily *signed*."); *Braxton*, 1 F. Supp. 3d at 725; *Polly v. Affiliated Computer Servs., Inc.*, No. 10-135, 2011 WL 93715, at *2 (E.D. Ky. Jan. 11, 2011). However, an employee must have actual knowledge of the existence of an arbitration agreement before it is enforceable. *Sprowls v. Oakwood Mobile Homes, Inc.*, No. 3: 99-CV-756-H, 2000 WL 33975578, *4 (W.D. Ky. May 12, 2000).

Spikener is adamant that she did not sign the DRP agreement or have any knowledge of it. The defendant contends that this assertion is untrue. It asserts that Spikener did review and sign the agreement, and that she also manifested acceptance of the contract through her actions. Specifically, it points to Spikener's acceptance of the term in her online employment application and subsequent acceptance of employment. However, Spikener contends that she did not personally complete the online application and knew nothing about the DRP provision. The record does not include testimony from Barcomb, the Olive Garden employee whom Spikener contends completed the application on her behalf.

Olive Garden has filed what it alleges are previous employment applications that Spikener submitted to another Darden restaurant in 2012 and 2014. [Record No. 8-1, 8-2] Each includes acceptance of the DRP acknowledgement. While these applications may tend to show that Spikener was aware of the existence of the DRP, Spikener has not had an opportunity to respond these filings.

The defendant also suggests that Spikener manifested assent to the DRP by continuing to work in the restaurant where a "DRP program poster" was prominently displayed. [Record No. 8-5, p. 2] Manager Gabat reports that the defendant posted information about "DRP panelists" and made copies of the employee handbook available at all times. Gabat claims that

all of this information was visible to employees during their work shifts and displayed prominently in areas where employees "had to walk and congregate." *Id.* This information was provided for the first time in the defendant's reply and, accordingly, further factual development is needed.

**IV.**

Viewing the evidence in the light most favorable to Spikener as the non-moving party, it is unclear whether she had actual notice of the DRP and manifested her assent to it. The Court may not simply choose between the parties' competing affidavits regarding these issues. Accordingly, an evidentiary hearing is necessary pursuant to 9 U.S.C. § 4. Therefore, based on the foregoing, it is hereby

**ORDERED** that this matter shall be assigned for an evidentiary hearing on **Friday, June 29, 2018**, beginning at the hour of **3:00 p.m.**, at the United States Courthouse in Lexington, Kentucky.

This 18th day of May, 2018.

Signed By:
*Danny C. Reeves* DCR
United States District Judge