UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MAJESTY SPIKENER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 18-188-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| OLIVE GARDEN HOLDINGS, LLC, | ) | **MEMORANDUM OPINION** |
| doing business as Olive Garden | ) | **AND ORDER** |
| Restaurant, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of the defendant's motion to dismiss and compel arbitration. [Record No. 6] The Court previously determined that genuine issues of material fact existed regarding whether the parties entered into an agreement to arbitrate. [Record No. 9] As a result, the Court held an evidentiary hearing on June 29, 2018. The defendant subsequently filed a motion to supplement the record [Record No. 15] which will be granted. Having considered the issues and the evidence presented, the Court will grant the defendant's motion to dismiss and compel arbitration.

**I.**

Plaintiff Majesty Spikener worked as a server at the Olive Garden restaurant in Lexington, Kentucky from November 2016 to March 2017. [Record No. 6-2] She filed suit in state court in February 2018, alleging that Olive Garden fired her in retaliation for reporting racial hostility in violation of Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010, *et seq.* The

defendant removed the action to this Court based on diversity jurisdiction, 28 U.S.C. § 1332(a)(1), and promptly filed a motion to dismiss and compel arbitration. [Record Nos. 1, 6]

GMRI, Inc., a subsidiary of Darden Restaurants, Inc., owns and operates Olive Garden restaurants throughout the United States, including one restaurant in Lexington. [Record No. 6-2, p. 1] Melissa Ingalsbe, the Director of Dispute Resolution and Human Resource Compliance for Darden and its subsidiaries, provided a sworn declaration stating that GMRI maintains a national Dispute Resolution Process ("DRP") that applies all employees. *Id*. at p. 2. GMRI's electronic employment application requires prospective employees to "accept" a clause regarding the DRP. It reads:

> I understand that the Darden Companies, including Olive Garden, . . . have in place a Dispute Resolution Process (DRP), and I further acknowledge and agree that if I am offered and accept employment, any dispute between me and any of the Darden Companies relating in my employment and/or my separation from employment, shall be submitted within one (1) year of the day which I learned of the event and shall be resolved pursuant to the terms and conditions of the DRP.

"Accept" appears beside this paragraph in Spikener's application, which was submitted on October 22, 2016. *See id*. at p. 7.

Ingalsbe also reported that, as part of the hiring and orientation process, each new employee is provided with a booklet that explains the DRP in detail. *Id.* at p. 3. The booklet is approximately 20 pages and describes the four steps of the DRP: Open Door, Peer Review, Mediation, and Arbitration. *Id.* at pp. 11-25. It also informs employees that "[d]isputes eligible for DRP must be resolved only through DRP, with the final step being binding arbitration heard by an arbitrator." *Id.* at p. 7. It goes on to clarify that "DRP-eligible disputes will not be resolved by a judge or a jury . . . . The Company and the Employee waive all rights to bring a civil court action for these disputes." *Id.* Each new employee is asked during

orientation to sign an acknowledgement form located at the back of the DRP book. *Id.* at p. 3. The acknowledgement states that the DRP covers claims under state and federal law relating to harassment and discrimination. *Id.* at p. 20.

The defendant is unable to locate Spikener's signed DRP acknowledgement. It maintains, however, that signing the acknowledgement is a condition of employment. [Record No. 6-2, p. 2] In other words, Spikener would not have been permitted to work at Olive Garden had she not signed the form. *Id.*

Despite these measures, Spikener is adamant that she was completely unaware of the DRP until after she filed this lawsuit. She asserts initially that she did not complete the job application personally and, as a result, never saw or accepted the DRP clause contained therein. [Record No. 7-1, pp. 1-2] During the evidentiary hearing, Spikener explained that she and her boyfriend had a date at the Olive Garden restaurant in Lexington on October 22, 2016. There, she encountered her friend, Service Manager Josh Barcomb, with whom she had worked at another local restaurant. According to Spikener, she told Barcomb that she had attempted to apply for a job *via* Olive Garden's online application system, but "the system was messed up." Spikener claims that Barcomb asked her to write down "all of [her] history . . . like a resume." Barcomb took Spikener's information and later returned, telling her that some of her information was already "in the system," based on prior job applications she had submitted to another Darden restaurant. [*See* Record Nos. 8-1, 8-2.] Spikener assumed that Barcomb submitted the application on her behalf, because she received a job offer on November 1, 2016, and was directed to report to orientation shortly thereafter.

Josh Barcomb also testified at the evidentiary hearing. He told a completely different story. Barcomb reported that he had worked with Spikener at another restaurant for a brief

period in 2014, but that the two were not acquaintances outside of work. He emphatically denied having completed any part of Spikener's application or having played any role in her application for employment at Olive Garden. Barcomb further testified that he was on vacation the week of October 22, 2016, and was not in the restaurant on that date. In support, he provided a written work schedule for October 2016 and a Facebook post by his wife indicating that he was, in fact, on vacation that week.

Jefe Gabat has been the General Manager of Olive Garden's Lexington restaurant for more than twelve years. Gabat testified regarding Darden's Team Member Acquisition System ("TAS"), which "tracks the moment" someone starts applying for a job online. According to Gabat, TAS records reveal that Spikener initiated her application on October 22, 2016, at 3:46 a.m., and completed it 35 minutes later, at 4:21 a.m. Gabat interviewed Spikener after receiving this application, and offered her a job on November 1, 2016.

Spikener, along with six other new employees, reported for orientation on November 7, 2016. [Record No. 8-5, p. 1] Gabat ordinarily assisted in training new service employees, but he was on vacation that week. His co-manager Sean Nealey (who no longer works for the defendant) conducted the orientation instead. Nealey provided an affidavit in support of the defendant's motion to compel arbitration, stating all of the new employees, including Spikener, completed and signed all of the required paperwork, including the DRP acknowledgement. [Record No. 8-3, pp. 1-3]

Gabat explained that when new employees come in for training, they are given folders containing new-hire paperwork, which is prepared by the defendant's corporate office. The paperwork discusses various topics, including rules about serving alcohol, handling cash, and security. It also includes the DRP booklet, which contains the acknowledgement form new

employees are required to sign. Although Gabat was not present during Spikener's orientation, he explained that he had worked "hand in hand for 15 years" with Nealey, who "was trained to do the orientation." Nealey performed nearly all of the orientations for new culinary team members, and also filled in for Gabat from time to time.

Gabat also reviewed the personnel files of the other employees present during Spikener's orientation, and found that each of them had signed the DRP acknowledgement. [Record No. 8-5] Spikener's personnel file, on the other hand, contained all new employee paperwork *except* the DRP acknowledgement and Team Member Handbook. [*See* Record No. 8-4.] Gabat did not know why those forms were missing, but, upon questioning, revealed that personnel files are kept in an unlocked file cabinet, in an unlocked office, with no other security measures. Thus, Spikener would have had access to the records during her employment with the defendant.

Barcomb and Gabat also testified regarding a DRP "poster" and panelist list that were hanging inside the restaurant in an area known as "server alley." Server alley is an area where servers go to "ring in checks" and get drinks. Additionally, information about the restaurant is often posted in this area. Barcomb and Gabat agreed that servers pass through this area constantly during their shifts and both men believed that these items were displayed in plain view during Spikener's employment.

The poster, which the defendant introduced during the evidentiary hearing, measures approximately 9 by 14 inches, is red and white, and states "Dispute Resolution Process" in a large font at the top. It describes the four steps of the DRP and provides telephone numbers for the DRP department and to initiate "the open door." The defendant also introduced a small white sheet of paper listing the DRP panelists available for step two of the DRP—the peer

review process. Spikener testified that she was very familiar with server alley, but that she had never seen the DRP poster, the panelist list, or any other information about the DRP.

Spikener presented the testimony of Megan White, who worked at the Olive Garden in Lexington in January and February 2017. White did not attend the same orientation as Spikener, but reported that the process was "sped through," and she did not remember the words "arbitration" or "dispute resolution process" ever being used. White testified that no one at Olive Garden ever discussed the DRP. Following the hearing, the defendant located White's signed DRP acknowledgement and seeks to file it in the record. [Record No. 15] Because the document tends to shed some light on the witness's ability to remember what she reviewed and/or signed during orientation, the motion will be granted.[1]

## II.

The Federal Arbitration Act provides:

> A written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Section 2 of the FAA "embodies the national policy favoring arbitration," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006), but there can be no agreement to arbitrate without the parties' mutual consent. *Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006). Accordingly, the Court must examine the purported

---

[1] The plaintiff has not filed a response in opposition to the defendant's motion to supplement the record, although the Court is mindful that the time for doing so has not expired. While the Court has granted the motion and has considered the tendered document, it is not essential to the Court's ruling.

agreement to arbitrate under general principles of state contract law. *Floss v. Ryan's Family Steakhouse, Inc.*, 211 F.3d 306, 211 (6th Cir. 2000). The only disputed issue is whether Spikener assented to the DRP. *See Sara v. Saint Joseph Healthcare Sys., Inc.*, 480 S.W.3d 286, 290 (Ky. Ct. App. 2015) (reciting elements of contract formation).

The FAA requires arbitration agreements to be written, but they do not have to be signed. *See* 9 U.S.C. § 2; *Seawright v. Am. Gen. Fin. Servs.*, 507 F.3d 967, 978 (6th Cir. 2007). Spikener does not dispute that the DRP booklet constitutes a written agreement. As previously described, it explains the DRP in detail, advises that both parties will give up the right to pursue certain actions in court, and makes clear that the final step is mandatory, binding arbitration. Based on all of the evidence that has been presented, the Court concludes that Spikener was aware of the DRP, knew that it was a mandatory condition of employment, and accepted/continued employment in the face of that knowledge.

As an initial matter, the Court is persuaded that Spikener had notice of the DRP's existence based on her 2017 employment application and, to a much lesser extent, job applications she submitted to Red Lobster in 2012 and 2014.[2] The defendant introduced convincing evidence to indicate that it was Spikener herself who submitted the electronic application on October 22, 2017, and "accept[ed]" the DRP clause. The Court specifically rejects Spikener's assertions that Barcomb assisted her in preparing any part of the subject application for Olive Garden. Although the employment application did not provide all terms

---

[2] Darden owned both Olive Garden and Red Lobster in 2012 and 2014, as indicated in Spikener's previous applications. Spikener accepted a DRP clause in each of those applications that is substantially similar to the one in the 2017 application. Spikener testified that, at the time of her 2017 application, she was not aware of any connection between Red Lobster and Olive Garden. However, this is inconsistent with her testimony that some of her information was "already in the system," at the time of her 2017 application.

of the DRP, Spikener's acceptance of the clause would have at least put her on notice of the DRP's existence.

The Court also concludes that the DRP was reviewed with new employees during the orientation on November 7, 2016. According to Jefe Gabat, the DRP is always covered during new employee orientations, as company policy requires it. Although Spikener claims that this did not happen, the defendant has produced signed DRP acknowledgments for each of the other employees present during her orientation. It is difficult to imagine a scenario in which Spikener's claim is accurate, yet each of the other new employees pulled out and completed a form buried in the middle of a nearly 20-page booklet.

Finally, the DRP poster and panelist list provide some evidence of Spikener's continuing knowledge of the DRP during her employment. While the DRP poster did not include the full terms and was not particularly attention grabbing, it was located in an area where servers were likely to see it. Although Spikener had already assented to the DRP by the time she frequented server alley, the poster and panelist list served as a daily reminder of the DRP.

The United States Court of Appeals and this Court have previously recognized that an employee may agree to be bound by an alternative dispute resolution program based on his or her actions. *See Seawright v. Am. Gen. Fin. Servs.*, 507 F.3d 967; *Polly v. Affiliated Comp. Servs., Inc.*, Civil Action No. 10-135-ART, 2011 WL 93715 (E.D. Ky. Jan. 11, 2011). There is no indication here that the defendant attempted to hide the DRP or trick employees into assenting to it. In contrast, all the evidence indicates that the defendant attempted to inform Spikener that her employment was contingent upon her agreement to the DRP. Further, the DRP booklet makes clear that procedures contained therein are binding on employees during

and after their employment.  By accepting employment and continuing to work in the face of this knowledge, Spikener assented to the DRP.

### III.

A final consideration is whether the Court should dismiss this action or stay it pending arbitration.  Section 3 of the FAA provides that, on application of one of the parties, the court shall stay the trial until arbitration has been had, "providing the applicant for the stay is not in default in proceeding with such arbitration."  Notwithstanding § 3 of the FAA, the case may be dismissed rather than stayed in cases where all claims are referred to arbitration.  *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (citing *Hensel v. Cargill*, 198 F.3d 245, *4 (6th Cir. Oct. 4, 1999) (table)).  Each of Spikener's claims is brought under the Kentucky Civil Rights act and appear to fall squarely under the DRP, which applies to "claims under state and federal law relating to harassment or discrimination." [Record No. 6-2, p. 20] Accordingly, dismissal is appropriate.

### IV.

Based on the foregoing, it is hereby

**ORDERED** as follows:

1. The defendant's motion to supplement the record [Record No. 15] is **GRANTED**.

2. The defendant's motion to dismiss and compel arbitration [Record No. 6] is **GRANTED**.

3. This matter is **DISMISSED**, with prejudice.

This 5th day of July, 2018.



Signed By:
*Danny C. Reeves* DCR
United States District Judge